IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CATHERINE JANE HARRISON,          :

    Plaintiff,                              :

vs.                                                   :        CA 10-0462-C

MICHAEL J. ASTRUE,                     :
Commissioner of Social Security,
                                                     :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. 636(c), for all proceedings in this Court. (Docs. 23 & 24 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the September 7, 2011 hearing before the Magistrate Judge, it is determined that the

Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to residuals from several motor vehicle accidents (including pain and numbness), degenerative disc disease of the cervical spine, carpal tunnel syndrome of the left hand, chronic tendonitis of the right shoulder, and depression secondary to her general medical condition. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2007.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of October 4, 2004 through her date last insured of June 30, 2007 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: carpal tunnel syndrome of the left hand; degenerative disc disease of the cervical spine, status post surgery; chronic tendonosis right shoulder; and depression secondary to general medical condition (20 CFR 404.1520(c)).
>
> .   .   .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). She can lift and carry 10 pound[s] frequently and 20 pounds occasionally, sit six hours, and stand/walk 4 hours in an eight hour day with normal breaks; she can occasionally climb stairs and

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 23 & 24 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**ramps, balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes or scaffold[s] or reach over head with [her] right upper extremity; she can only occasional[ly] reach, handle, and finger with [her] left upper extremity; she should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, [and] operating motor vehicle[s]; and all exposure hazards. She can understand, remember and carry out short, simple instructions.**

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking o[r] standing, or when it involves sitting most of the time with some pushing or pulling of [] arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time (20 CFR 404.1567(b) . . . ).

Unskilled work is work[] which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. A job[] is considered unskilled if the primary work duties are handling, feeding and off-bearing, or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed (20 CFR [] 404.1568(a) . . . ).

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

When questioned by the Administrative Law Judge, the claimant testified that she is 54 years old; she has a General Equivalency Diploma (GED); she is right handed; she has lived alone since 2002; she has a driver's license; she last worked in 2002; she had to quit working due to an automobile accident; she had to have surgery; she received Worker's Compensation; her past records are in Louisiana; she was displaced by Katrina; between 2002 and 2007 she had several surgeries and therapy; she still has pain in her neck, numbness in her arms and legs, headaches, and a burning feeling in [her] body; she had two blackouts where she fell to the floor; her pain level is 5-6 even with medications; she has carpal tunnel in her right hand; her left hand has not been diagnosed, but she has numbness and pain in the left arm, which she thinks is from her neck; she has anxiety and depression which interferes with her ability to work; the accident has caused her to deteriorate in her activities, which makes her depressed; she does not sleep well during the night; she performs household chores when she can and it is needed; she does some exercises that were given during her therapy; she can lift five pounds; she is not sure how long she can stand/walk; she can sit for a while and then she has to move and get up; s[h]e is not sure how long[,] it depends on how much her body burns; she watches TV; lies down and sits some; no position is really comfortable; she does not do much where she has to stand; she stands when she cooks; she cooks enough for several meals in a crock pot; she uses items to help her open jars.

When questioned by her representative, attorney Wendy A. Pierce, the claimant testified that she had her first accident in January 2002 while on the job; she received Worker's Compensation until 2007 at which time her case was settled for $98,000; surgery was first performed in September of 2002 on her neck; her neck continued to hurt; she underwent a second surgery; she went to a neurologist and had physical therapy; she still goes back to Louisiana to see her doctor every three months; she had a second accident in 2003; sometimes she falls asleep due to sleep apnea; she has

4

problems concentrating; her eyes blur, but her vision is okay; her depression is due to her inability to work; her pain continues.

The medical evidence reflects that the claimant was injured on January 21, 2002, when she was involved in a motor vehicle accident. She was treated in the emergency room. Conservative treatment was provided, including medications and physical therapy. Dr. Altman recommended cervical MRI. The claimant was treated by Dr. Razza and had a cervical MRI. She was subsequently referred to Dr. Stefan Pribil, a neurosurgeon, due to the findings of the MRI, which showed cervical disc injury at levels C3-4, C5-6[] and C6-7. Dr. Pribil completed the anterior cervical fusion at levels C5-6 and C6-7 on September 11, 2002. The claimant subsequently had a motor vehicle accident in November of 2002 that was not work related. Cervical x-rays did not show any problems from her accident. However, because of continued problems, the claimant had a second surgery, posterior cervical fusion at level C3-4 with pedicle screws. The claimant was also treated by orthopedic surgeon Dr. Hamsa for a while. He recommended an MRI of the left shoulder performed on May 11, 2004, which was completely unremarkable to the rotator cuff mechanism and no evidence for a GH lesion or Hill-Fax deformity. Dr. Hamsa recommended cortisone injections to help reduce inflammation, but the claimant was allergic to these medications. She was referred to physical therapy. On November 4, 2004, Dr. Hamsa noted that the claimant had recently seemed to recover a good deal of strength and range of motion to her right shoulder.

The claimant has also been treated by Dr. Shamsnia, a neurologist. On February 3, 2004, Dr. Shamsnia noted that her examination was remarkable for diminished reflexes as well as spasm in the cervical paraspinals, limited range of motion, and pain and tenderness in the lumbosacral region. Dr. Shamsnia's impression was neck pain, low back pain, pain and paresthesia in the limbs, and insomnia. He recommended EMG and nerve conduction studies, which were completed on August 17, 2004, and showed evidence of carpal tunnel in the left hand. Dr. Shamsnia treated the claimant with Neurontin [].

A neurological evaluation by Dr. Michael Wilensky on August 25, 2005, indicates that he diagnosed the claimant with cervical disease, depression, status post cervical surgery, status post lumbar surgery, and rule out carpal tunnel syndrome. Her neurological examination was within normal limits. Motor examination showed right shoulder restriction. Sensory examination was normal to pin prick and vibration sense. Deep tendon reflexes were symmetrical (upper 2+, lower 2+). Both plantars were flexor. Cerebellar exam was normal. Her gait was normal, Romberg was positive

5

and tandem gait normal. Neck exam revealed decreased bilateral range of motion at 45 degrees and bilateral trapezius and cervical tenderness. Low back exam was normal. Involuntary movements were negative. Dr. Wilensky recommended MRI of the cervical spine and antidepressants [].

An MRI of the cervical spine dated December 28, 2005, revealed evidence of previous operative intervention of the cervical spine; focus of syringohydromyelia versus hydromyelia at the T4 level; questionable ferromagnetic warping artifact versus fusiform expansion of the cervical spinal cord at the C4-5 level; bulging of the cervical intervertebral disc; subtle bulging of the C7-T1 intervertebral disc; subtle bulging of the T3-4 intervertebral disc; pathologic ligamentous laxity was not demonstrated [].

An MRI examination of the right shoulder dated April 25, 2006, revealed intra-articular tear of the distal supraspinatus tendon with focus of full thickness signal abnormality, which may represent tendinosis or tendonitis, focal full thickness fenestration could not be excluded; subacromial bursitis; fluid in the acromioclavicular joint with neutral acromial curvature and caudal sloping of the lateral margin of the os acromion; and fluid in the region of the axillary recess of the shoulder [].

An MRI of the thoracic spine dated April 25, 2006, revealed a focus of abnormal signal intensity but without pathological enhancement on the thoracic spinal cord at the T4 level; findings consistent with a focus of syringohydromyelic type changes; narrowing, desiccation, and bulging of the T8-9 intervertebral disc; subtle bulging of the T7-8 intervertebral disc; and subtle bulging of the T3-4 intervertebral disc [].

An MRI of the claimant's cervical spine dated April 25, 2006, revealed previous extensive operative intervention; bulging of the C3-4 intervertebral disc; abnormal architecture of the cervical spinal cord at the C4-5 level with fusiform expansion, which might be due to distortion from ferromagnetic warping artifact; abnormal signal characteristics were not demonstrated either before or after the administration of intravenous contrast media; and what appears to be a focus of syringohydromyelia at the T4 level of the thoracic spine [].

On December 26, 2006, treating orthopedist, Dr. R. Vaclav Hamsa, noted that the claimant had a history of trauma with ACF at C3-4 and C4-5. He diagnosed the claimant with chronic tendonosis right shoulder and herniated nucleus pulposus after surgery at C3-4 and C4-5. His prognosis for the claimant was fair. Dr. Hamsa restricted the claimant to no lifting

over 20 pounds and no carrying over five to eight pounds, as well as no overhead work [].

On March 17, 2007, the claimant underwent a consultative examination by Dr. Amanda McBane who diagnosed her with cervical pain associated with radiculopathy; rotator cuff injury; and numbness and burning sensation. On physical examination, Dr. McBane reported that the claimant appeared . . . in mild distress throughout the examination. She was able to sit comfortably throughout the history taking, but had some difficulty getting on and off the examination table. She walked very slowly. She sat very stiff and straight throughout the history and physical examination. . . . Gait was normal, but slow. She appeared to hold herself very stiffly and very straight throughout sitting, standing and walking. Romberg was absent. On range of motion testing of the cervical spine, the claimant's flexion was 25-30 degrees, extension 25-30 degrees, lateral flexion 25-30 degrees and rotation decreased with some mild audible pops an[d] crepitus with even a small amount of rotation. She reported extreme pain with all cervical range of motion exercises. On range of motion testing of the dorsolumbar spine, her lateral flexion was 30 degrees, flexion 90 degrees and extension 30 degrees. Range of motion of the hip joints revealed an internal rotation of 40 degrees, external rotation of 50 degrees, abduction of 40 degrees, adduction of 20 degrees, forward flexion of 100 degrees, and backward flexion [of] 30 degrees bilaterally. . . . She had paravertebral muscle spasm in the cervical region and tenderness to palpation in the cervical region with crepitus with rotation of the neck. She had normal muscle bulk and tone. Strength testing in the bilateral upper proximal and distal as well as grip strength was 5/5. Lower extremity proximal and distal muscle groups were 5/5. Reflexes were 2+ bilaterally in the upper and lower extremities. On sensory exam, she had slight decreased touch and pinprick in the lower left arm ad hand as well as the right foot below the ankle. . . .

. . .

After the claimant's date last insured for Title II disability benefits expired on June 30, 2007, Dr. Morteza Shamsnia completed a Physical Capacities Evaluation on September 11, 2008. Dr. Shamsnia found the claimant capable of sitting [] for three hours, standing for one hour, and walking for one hour total at one time; capable of sitting for five hours, standing for two hours, and walking for two hours total during an entire eight-hour day; capable of lifting frequently six to ten pounds and occasionally 11 to 20 pounds; capable of carrying frequently up to five pounds and occasionally 11 to 20 pounds; capable of using her right hand for simple

grasping, but incapable of using her hands for repetitive action such as pushing and pulling of arm controls and fine manipulation; incapable of using her left hand for simple grasping; capable of using her feet for repetitive movements as in pushing and pulling of leg controls; and capable of occasional bending, squatting, crawling, climbing and reaching. Dr. Shamsnia further found the claimant to have a total restriction to activities involving unprotected heights, being around moving machinery, and driving automotive equipment, and a moderate limitation to activities involving exposure to dust, fumes and gases. Furthermore, Dr. Shamsnia noted the claimant's diagnoses as chronic headache, arm numbness, [and] cervical and spine abnormalities. Additionally, he completed a Clinical Assessment of Pain form finding that the claimant's pain [is] present to such an extent as to be distracting to adequate performance of daily activities or work; physical activity greatly increases pain [] to such a degree as to cause distraction from task or total abandonment of task; and that side effects of prescribed medication will be totally restrictive, and, thus, the claimant will be unable to function at a productive level of work [].

On December 6, 2008, Dr. Shamsnia saw the claimant on follow up. Dr. Shamsnia's neurological exam was essentially unchanged. The claimant's motor strength was 5/5 in bilateral upper and lower extremities with normal bulk and tone. There were no objective sensory deficits in the left upper extremity; however, she did have subjective complaints of radiating pain down the extremity. Reflexes were 2+ equal and symmetrical. The claimant reported that she no longer had insurance coverage and was currently a self-pay, as a result, she was unable to afford the recommended testing, MRI of cervical spine and EEG. The plan was to refill Xanax 0.5 mg p.o. b.i.d., Vicodin HP one p.o. b.i.d., and Ambien 10 mg. one p.o. q.h.s. p.r.n. []

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not totally credible to the extent they are inconsistent with the above residual functional capacity assessment.

The medical evidence reflects a history of neck problems and surgery with complaints of ongoing pain and numbness in her extremities . . . . The most recent medical evidence shows normal motor strength with no objective sensory deficits . . . . Nevertheless, given the claimant's history of paresthesia and treatment with Neurotin, the Administrative Law Judge

accepts her limitation of the upper extremity as set forth in Dr. Shamsnia's physical capacities evaluation . . . . However, the undersigned rejects her limitation of inability to do fine manipulation as it is not supported by the medical evidence of record, and it is inconsistent with the consultative report by Dr. McBane . . . . On physical examination, Dr. McBane reported that the claimant was right handed. She had normal muscle bulk and tone. Strength testing in the bilateral upper proximal and distal as well as grip strength was 5/5. Lower extremity proximal and distal muscle groups were also 5/5. Reflexes were +2 bilaterally in the upper and lower extremities [].

The Administrative Law Judge finds it significant that the claimant acknowledged that she loves to walk and walks "all the time". She further reported having a driver's license and reliable transportation, and that she maintains her automobile insurance[]. The Administrative Law Judge further finds it significant that the claimant's treating physician does not restrict her walking. The evidence of record further reflects that the claimant lives alone and takes care of her personal care without assistance. She [] performs household chores, shops without help, watches television, reads, drives a vehicle, goes to church, and she has no problem getting along with others. The undersigned concludes that the claimant's ability to engage in a wide array of activities of daily living is persuasive evidence that her alleged symptoms resulting from physical and/or mental impairments are not totally disabling.

The Administrative Law Judge has considered the opinion of treating orthopedist Dr. Hamsa and reflected above in Exhibit 5F. Dr. Hamsa restricted the claimant to no lifting over 20 pounds and no carrying over five to eight pounds, as well as no overhead work[]. ***The undersigned generally accepts these limitations as consistent with a range of light work.***

The Administrative Law Judge has also considered the opinion of Dr. Shamsnia as set forth above in Exhibit 17F, completed after the claimant's date last insured for Title II benefits had expired on June 30, 2007. Dr. Shamsnia's opinion is consistent with sedentary to light work. However, the undersigned rejects Dr. Shamsnia's upper extremity limitations and pain estimate as they are out of proportion to treatment notes and objective findings. The undersigned further notes that the physical capacities evaluation was completed after the claimant's date last insured for Title II benefits had expired.

Nothing in the record suggests that the claimant's physical and/or mental impairments have been incapable of being alleviated or controlled with the proper and regular use of prescription medications. In fact, the record discloses that such medications have proven successful in assisting the claimant in maintaining control of her conditions and mitigating any accompanying symptomatology. The record contains no evidence of the claimant's ongoing difficulties with side effects of medication.

The undersigned recognizes the paucity of medical evidence in this case, and she specifically acknowledges the wide gaps between treatment visits. It is reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a disabling degree, she would have presented to her physicians for ongoing treatment. . . .

All the above factors lead the undersigned to a conclusion that the claimant's alleged physical and/or mental symptoms and conditions are not of a disabling degree. After considering the entirety of the record, the undersigned concludes that the claimant would not be precluded from performing, on a regular and sustained basis, the physical requirements of light work, with some additional restrictions as noted below.

When the claimant's impairments, viewed individually and in combination, and her allegations of pain are considered, the undersigned finds that the claimant is able to work at the light level of exertion with the following additional limitations: She can lift and carry 10 pound[s] frequently and 20 pounds occasionally, sit six hours, and stand/walk 4 hours in an eight hour day with normal breaks; she can occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl; she can never climb ladders, ropes or scaffold[ing] or reach overhead with [her] right upper extremity; she can only occasional[ly] reach, handle, and finger with [her] left upper extremity; she should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, [and] operating motor vehicle[s]; and all exposure hazards. She can understand, remember and carry out short, simple instructions. The undersigned does not accept claimant's complaints of an inability to do fine manipulation as it is not supported by the medical records as a whole.

.   .   .

This finding is further supported by the opinions of the State Agency physician and psychologist who completed Residual Functional Capacity Assessments and a Psychiatric Review Technique form at the lower level

10

of adjudication and also found the claimant capable of work activity at the light level of exertion (Exhibits 10F, 11F and 12F).

**6.     The claimant has no past relevant work (20 CFR 404.1565).**

**7.     The claimant was born on October 4, 1954 and was 50 years old, which is defined as an individual approaching advanced age. (20 CFR 404.1563).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).**

**10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.13. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine

11

the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the following unskilled, light exertional occupations: parking attendant (DOT #915.473-010) of which there are 45,000 in the national economy and arcade attendant (DOT #342.667-014) of which there are 39,000 in the national economy.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule[].

**11.    The claimant was not been under a disability, as defined in the Social Security Act, at any time from October 4, 2004, the amended alleged onset date, through June 30, 2007, the date last insured (20 CFR 404.1520(g)).**

(Tr. 12, 14-17, 18-20, & 21-22 (most internal citations omitted; some emphasis supplied).)

The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of

examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id. at 1005.  Once the claimant meets this burden, as here,[2] it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that, within the framework of the grids, she can perform those light jobs identified by the vocational expert, is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

In this case, the plaintiff contends that the ALJ made the following errors: (1) she failed to follow the sequential evaluation and failed to consider all of plaintiff's documented severe exertional and non-exertional impairments which affected her analysis of the plaintiff's degree of pain and functional limitation; and (2) she erred in

---

[2]   Actually, the ALJ made this a non-issue by finding that the claimant had "no past relevant work[.]" (Tr. 21.)

[3]   This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

disregarding the medical opinion provided by Dr. Shamsnia, who had treated plaintiff for a significant period of time, and substituting her own opinion regarding the medical diagnoses and resulting limitations.[4] (*See* Doc. 16.) Because the undersigned agrees with the plaintiff that the ALJ improperly determined her RFC and did not meet the Commissioner's fifth-step burden of identifying jobs existing in significant numbers in the national economy that she is capable of performing, there is no need to address at length the specifics of the assignments of error raised by Harrison. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted). Stated differently, the burden is on the Commissioner at the fifth step of the sequential evaluation process

---

[4] Pervading both of these arguments is plaintiff's over-arching contention that the ALJ improperly determined her residual functional capacity and, as a result, failed to satisfy the Commissioner's fifth-step burden, plaintiff arguing in her brief that her "exertional and non-exertional impairments are disabling and preclude her from performing more than ***sedentary work***[,]" (Doc. 16, at 17 (emphasis supplied)) and plaintiff's attorney noting during oral argument on September 7, 2011, that had the ALJ properly determined that plaintiff could only perform sedentary work prior to her date last insured the ALJ necessarily would have found her disabled under the grids.

to establish capacity to perform other work and thereby to establish the claimant's residual functional capacity. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

In attempting to establish plaintiff's physical residual functional capacity, the ALJ in this case inextricably tied her RFC finding to the physical residual functional capacity assessment completed by disability examiner Patricia Easley (*see* Tr. 317-324), a disability specialist with the Social Security Administration (*see, e.g.,* Tr. 301), who the ALJ mistakenly identified as a state-agency physician (Tr. 21). (*Compare* Tr. 14, Finding No. 5 *with* Tr. 318-319.) The ALJ's RFC finding (Tr. 19 ("**[T]he undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b).[5] She can lift and carry 10 pound[s] frequently and 20 pounds occasionally, sit six hours, and stand/walk 4 hours in an eight hour day with normal breaks; she can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes or scaffold[s] or reach overhead with [her] right upper extremity; she can only occasional[ly] reach, handle, and finger with [her] left upper extremity; she should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, operating motor vehicle[s]; and all hazards. She can understand, remember and carry**

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) (2011). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.

**out short, simple instructions."** (footnote added)) mirrors the RFC findings made by Easley on April 12, 2007 as they relate to Harrison's ability to sit and lift and/or carry weight (*compare id. with* Tr. 318 (findings that plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently, and can sit 6 hours in an 8-hour workday)) and it was this RFC (as well as the one completed by Dr. Shamsnia on September 11, 2008) upon which the ALJ based her hypotheticals to the vocational expert (*compare* Tr. 317-324 *with* Tr. 48-53). The ALJ's clear reliance upon this RFC is important since it is the only physical RFC of record upon which the ALJ could insert plaintiff into the light category based upon lifting and carrying requirements inasmuch as the remaining evidence of record establishes that plaintiff can only perform the lifting and carrying requirements of sedentary work[6] (*compare* Tr. 226 (Dr. Vaclav Hamsa's February 2, 2007, findings that based on plaintiff's chronic tendonosis of the right shoulder and "HNP-after surgery-C3-4/C4-5" she cannot lift over 20 pounds or carry over 5-8 pounds and, further, can perform no overhead work) and Tr. 358 (Dr. Shamsnia's September 11, 2008 findings that based upon chronic headaches, arm numbness, and cervical and thoracic spine abnormalities, plaintiff can occasionally lift and carry up to 20 pounds, can frequently lift up to 10 pounds, but can only frequently carry up to 5 pounds) *with* Tr. 51 (VE's testimony that the limitations noted by Shamsnia as a whole "would be very limiting in the labor market.")). *Cf. Duren v. Astrue,* 622 F.Supp.2d 723, 733-734 & 734

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a) (2011).

(W.D. Wis. 2009) ("[A]s plaintiff's lawyer pointed out to the Appeals Council, the administrative law judge's determination that [Dr.] Hamburg's limitations would allow for 'a wide range of light and sedentary work' was inaccurate. Under the regulations, 'light' work is defined as that which involves 'lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.' . . . Hamburg concluded that plaintiff could lift and carry at most 10 pounds *occasionally*, which, contrary to the administrative law judge's finding, would rule out light work. . . . These errors are not necessarily fatal, however, because the administrative law judge found that plaintiff could perform sedentary work. Work is sedentary if it requires primarily sitting and 'involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.' . . . At the Appeals Council, plaintiff argued that even sedentary work was not possible under Hamburg's limitations because Hamburg found that plaintiff was 'incapable of lifting and carrying any amount of weight.' . . . That is not what Hamburg said. He said she was unable to lift and carry any weight 'frequently,' but could lift and carry up to 10 pounds 'occasionally.' . . . This would allow for the occasional carrying of light objects contemplated in the definition of sedentary work.").

This Court has held on numerous occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence or, where available, by the residual functional capacity assessment of a disability specialist, *see, e.g., Casey v. Astrue*, CA 07-0878-C, Doc. 21, at 10 n.3 (June 19, 2008), citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (the opinion of a non-examining, reviewing physician "is entitled to

little weight and taken alone does not constitute substantial evidence to support an administrative decision."); instead, this fifth-step burden must be supported by the residual functional capacity assessment of a treating or examining physician. Here, contrary to the ALJ's suggestion, Dr. Hamsa's February 2, 2007 RFC limitations are not "consistent with a range of light work[]" (Tr. 20); rather, these limitations (particularly the inability to carry more than 5 to 8 pounds) "would rule out light work." *Duren, supra,* 622 F.Supp.2d at 734. Because the only physical RFC evidence of record from a treating or examining physician prior to plaintiff's date last insured[7] specifically rules out light work, the ALJ's RFC finding is not supported by substantial evidence.[8] Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further consideration of plaintiff's proper RFC (prior to the expiration of her insured status) and her ability, at the fifth step of the sequential evaluation process, to perform the physical and mental requirements of other work in the national economy.

## CONCLUSION

---

[7] On remand, the ALJ can decide exactly how she wants to treat Dr. Shamsnia's September 11, 2008 RFC and pain assessments. In the undersigned's opinion, it is simply inconsistent for the ALJ to pick out of those assessments portions with which she agrees but then, at the same time, to reject all other portions with which she does not agree based upon the fact that these assessments were conducted after plaintiff's insured status expired.

[8] As aforesaid, the RFC evidence from disability specialist Patricia Easley provides no evidentiary support for the ALJ's RFC determination and the ALJ made no attempt to explain how Dr. Amanda McBane's March 17, 2007 clinical findings equate to the ability to lift and carry 10 pounds frequently and 20 pounds occasionally particularly in light of this examiner's notation of plaintiff's limited range of motion of her cervical region, as well as muscle spasm and tenderness in that region (*see* Tr. 292-293).

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625,

125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 29th day of September, 2011.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**